**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 20, 2005
Decided May 27, 2005

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04–2396

HENOKE TESFAHUN
    *Petitioner,*

    *v.*

ALBERTO GONZALES,
    *Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals

No. A96 144 365

**O R D E R**

Henoke Tesfahun fled Eritrea in March 2002 after being imprisoned for a year and a half and tortured because of anti-government agitation. After a five-day trek on foot to Sudan, he flew to Mexico and entered the United States without inspection; shortly thereafter, he claimed asylum. An IJ denied the application, and the BIA adopted the IJ's order, adding several grounds of its own. Because the reasons given by the Board and the IJ reflect neither the record nor careful and complete reasoning, we grant the petition for review.

## I. Background

In 1989 Tesfahun joined the Eritrean People's Liberation Front ("EPLF"), a guerrilla movement that advocated independence for the Ethiopian province of Eritrea. Tesfahun served the EPLF as a soldier until 1991 in the province's war of independence with Ethiopia; Eritrea prevailed, and after a referendum in 1993, declared itself a sovereign state. The EPLF adopted the new name People's Front

for Democracy and Justice ("PFDJ") and formed a government, electing EPLF leader Issaias Afwerki as the new country's first president. Once the fighting stopped, Tesfahun left the army and took a job with the government's Internal Affairs office in Asmara, staying on there until 1999.

Late in the 1990s, Tesfahun began voicing his opposition to the PFDJ government. Like many other Eritreans, he deplored the regime's well-chronicled descent into authoritarianism and its stifling of dissent, and strenuously opposed the government's decision to go to war again with Ethiopia in 1998 over a border dispute. Tesfahun organized dissidents and attended local meetings and teach-ins held at "sport organizations" and churches, "giving speeches" and "express[ing] his anger" regarding the war. The government pegged him for a rabble-rouser and police officers arrested him in his home in February 1999.

Tesfahun was taken to a police station, where for two weeks officers interrogated him, called him a traitor, and beat him repeatedly with fists and rifle butts. He was then transferred to a nearby prison, where he was held for a year and five months. Because he had spoken out against the war with Ethiopia, interrogators assumed that he was a member of the anti-war Eritrean Liberation Front ("ELF"), an underground opposition party, and demanded that he name other members and reveal the group's designs. When Tesfahun denied any affiliation with the ELF, his captors tortured him repeatedly. He testified that on 22 separate occasions, he was tortured in one of three ways: he was flogged with an electric cord, punched in the stomach while his feet and hands were chained together, or bound loosely to a pole by hand and foot and spun around it while guards beat his stomach and legs—a method known as the "figure eight." Tesfahun weakened from these beatings; he said he "was very skinny and sick," and eventually was released to his uncle's custody "because everyone thought that I was going to die." He was taken to his grandmother's house, where for two months he convalesced with the help of traditional medicines.

"[D]etermined to fight back," Tesfahun joined the ELF in December 2000 after having learned about the organization from other prisoners. He became an "active organizer" for the party, traveling between towns to recruit new party members, hand out informational pamphlets about the government's misdeeds and the opposition's efforts, and encourage disgruntled Eritreans to form local ELF branches. His activities again attracted attention from the government, which sent police officers to his grandmother's house to find him. But Tesfahun was in another town performing ELF "field work," and after his grandmother sent word to him he dropped everything and set out on foot for Sudan.

In his asylum application, Tesfahun claimed that he had been persecuted because of his political opinion. The IJ denied the application, concluding that

Tesfahun had not "corroborated any specific aspects of his claim," including his "identity," his membership in the ELF or EPLF, his injuries, his flight from Eritrea to the United States, or the long-term psychological impact of his mistreatment. Therefore, the IJ stated, Tesfahun had not "met his burden of establishing eligibility for asylum"; the IJ made no specific findings as to credibility, past persecution, or Tesfahun's fear of future persecution. The IJ also noted that he found it "curious" that Tesfahun referred to the current government as the EPLF, since the party formally changed its name to the PFDJ in 1994. The BIA adopted the IJ's opinion in a three-paragraph order, in which it noted two additional points that showed that Tesfahun had not "met his burden of proof." First, he had "no valid explanation as to why he would join ELF . . . after his release from jail, thereby placing himself and his family at risk," and second, his "testimony concerning his anti-government activities" was "extremely abbreviated and lacking in detail."

## II.  Analysis

In this petition, Tesfahun attacks each of the four grounds cited by the IJ and the BIA for denying his application, first challenging the IJ's conclusion that he failed to corroborate certain aspects of his claim. Tesfahun argues that he did corroborate certain points, and that he sufficiently explained his failure to corroborate others.

We have stated before that applicants who provide credible testimony need not supply corroborating evidence. *See Lin v. Ashcroft*, 385 F.3d 748, 756 (7th Cir. 2004); *Uwase v. Ashcroft*, 349 F.3d 1039, 1045 (7th Cir. 2003); *Georgis v. Ashcroft*, 328 F.3d 962, 969 (7th Cir. 2003). But even assuming the need for such corroboration, we cannot review the IJ's demand if the IJ does not (1) make an express credibility finding; (2) explain why it is reasonable to demand corroboration; and (3) explain why the petitioner's explanation for failing to supply corroboration is inadequate. *Gontcharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004). The IJ did none of these things. He did not make an express credibility finding, although his concerns, and those expressed by the BIA, do tend to center around the implausibility and lack of veracity in Tesfahun's narrative. This court has recently and repeatedly criticized IJs for their failure to make clear findings of credibility. *See, e.g., Iao v. Gonzales*, 400 F.3d 530, 534 (7th Cir. 2005); *Diallo v. Ashcroft*, 381 F.3d 687, 698–700 (7th Cir. 2004); *Muhur v. Ashcroft*, 355 F.3d 958, 961 (7th Cir. 2004).

The IJ also did not explain why it was reasonable to expect corroboration, and he nowhere stated why Tesfahun's seemingly plausible explanations for failing to provide corroboration were inadequate. Tesfahun testified that he attempted to obtain documentation of his ELF activities through ELF members in the United States, but they had not yet verified his membership with Eritrean ELF members.

This is unsurprising in light of Tesfahun's expert witness's assertion that the ELF was exiled to Sudan in 1981, and insofar as it exists in Eritrea today, is a clandestine outfit, and thus likely processes overseas requests for documents slowly, if at all.  Further, it is unsurprising that Tesfahun did not anticipate the need to bring proof of his six-year employment with the government before fleeing Eritrea; after all, he left the country on foot, without returning home, when he learned that he was a wanted man.  *See Grupee v. Gonzales*, 400 F.3d 1026, 1027 (7th Cir. 2005) (stating that applicant who fled country quickly could not be expected to have planned ahead to bring documentation of his work in home country).  The IJ's expectation of corroboration of injuries, physical and mental, sustained in prison is also misplaced because Tesfahun had no medical documentation; he recovered at his grandmother's house with the help of traditional medicines.  Further, he says that he tried to find psychological treatment in the United States, but this was difficult because he had so little money.  *See Balogun v. Ashcroft*, 374 F.3d 492, 502 (7th Cir. 2004) (noting that petitioner's "economic circumstances" may render IJ's demands of corroboration unreasonable).  In light of this testimony, it is unclear what sort of corroboration exactly the IJ expected Tesfahun to provide.  Finally, Tesfahun's flight from Sudan to Mexico—which the IJ insisted he prove—is a detail so minor that no corroboration is required.  *See Uwase*, 349 F.3d at 1043.

Moreover, Tesfahun did provide some important corroborating evidence. Contrary to the IJ's assertion that Tesfahun failed to corroborate his "identity," he introduced into evidence letters from two Eritrean friends verifying that he was born and raised in Eritrea, and that he was arrested by government forces for his opposition to the ruling regime.  The IJ flatly stated, without explanation, that neither of the letters could "establish the veracity of his claim."  Tesfahun also buttressed his application with the testimony and affidavit of an expert witness, as noted above.  *See Kerciku v. INS*, 314 F.3d 913, 918–19 (7th Cir. 2003) (testimony of expert witness may be so compelling as to control outcome of asylum application). Tricia Hepner, a doctoral candidate at Michigan State University with many publications on Eritrean affairs to her name, described the Eritrean government's detention and mistreatment in the late 1990s of political opponents such as students and ELF members.  She concluded that "Mr. Tesfahun's experiences are consistent with my observations and what is known about the treatment of dissidents.  If deported to Eritrea, he is extremely vulnerable to further harsh treatments."  The IJ noted Hepner's remarks but did not explain why they were insufficient to corroborate Tesfahun's narrative.

Next Tesfahun argues that the IJ ignored the record when he opined that it was "curious" that Tesfahun would refer to the current government as the EPLF, since the State Department Country Report from 2001 notes that the party changed its name to the PFDJ in 1994.  Tesfahun points to Hepner's testimony that in

Eritrea, "most people perceive the PFDJ to be the EPLF reconfigured," confirming that his use of the older moniker conforms to common practice in his country. This evidence undermines the IJ's speculation about the party's name as a valid reason for denying Tesfahun's application, *see Uwase*, 349 F.3d at 1042 (IJ's speculation and conjecture could not serve as basis for discrediting applicant), and there is more evidence like it. In referring to the State Department report, the IJ ignored the sentence immediately preceding the sentence noting the EPLF's change of name: "The Eritrean People's Liberation Front (EPLF), which led the 30-year war for independence, has controlled the country since it defeated Ethiopian armed forces in 1991; its leader, Isaias Afwerki, serves as the President." The State Department report thus buttresses Tesfahun's explanation that the EPLF, although nominally defunct, is still perceived by many Eritreans (and by the United States government) as the party in power.

Tesfahun next turns to the BIA's additional grounds for denying his application, beginning with its assertion that he had "no valid explanation" for his risky decision to join the ELF after his release from prison. Again, this observation is flatly contradicted by the record. Tesfahun points to his testimony from the hearing in response to his lawyer's questions about his reasons for joining the ELF despite the dangers it entailed: "[W]hatever I suffered my brother will also suffer under EPLF . . . . What they have done to me is something that you don't do to a human being and what they have done to me could be done to others, too. And I had to do something about that." The BIA did not address this justification for joining the ELF, but stated merely that Tesfahun had offered "no valid explanation." This choice of words is particularly indicative of the perfunctory nature of the IJ's and BIA's opinions in this case: would the Board similarly describe as not "valid" Nelson Mandela's decision to fight apartheid rather than flee South Africa after *his* release from prison in 1990?

Finally, we disagree with the BIA's characterization of Tesfahun's testimony regarding his anti-government activities as "extremely abbreviated and lacking in detail." Tesfahun's testimony, in our opinion, is of sufficient detail to establish that he was an anti-government agitator and suffered serious mistreatment as a result of his political opinion, which is all that he was required to demonstrate. *See Qiu v. Ashcroft*, 329 F.3d 140, 151 (2d Cir. 2003) (holding that testimony is "too vague" only if it fails to identify facts corresponding to each element of refugee status under the immigration statutes). This is particularly true in light of the detailed testimony Tesfahun provided regarding the most important elements of his claim, such as his detention and torture. *See* Admin. R. 75 (describing initial interrogation by three officers and five prison guards); 80–81 (detailing specific methods of torture and the number of times each was applied). Thus, like the other three grounds cited by the BIA and the IJ, we are convinced that this point does not provide substantial evidence for the denial of Tesfahun's asylum application.

### III.  Conclusion

We grant the petition for review, vacate the underlying decision, and remand for further proceedings.